UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

IBRAHIMA SORY SOW,

                    Petitioner,

      v.

WILLIAM P. BARR, Attorney General,
United States of America, et al.,

                    Respondents.

**DECISION AND ORDER**

6:19-CV-06794 EAW

---

## INTRODUCTION

*Pro se* petitioner Ibrahima Sory Sow ("Petitioner"), an immigration detainee currently detained at the Buffalo Federal Detention Facility ("BFDF") in Batavia, New York, seeks a *writ of habeas corpus* pursuant to 28 U.S.C. § 2241. (Dkt. 1). Petitioner argues that his continued detention is unconstitutional and seeks immediate release or, in the alternative, a bond hearing. (*Id.* at 10).

For the reasons that follow, the Court denies Petitioner's request for immediate release, but finds that Petitioner is entitled to an individualized bond hearing at which the Government bears the burden of proving by clear and convincing evidence that Petitioner poses either a risk of flight or a danger to the community.

## BACKGROUND

Petitioner is a native and citizen of the Republic of Guinea. (Dkt. 4 at 34, ¶ 5). Petitioner entered the United States at an unknown location and was admitted to the United States at an unknown place or time without possession of a valid immigrant visa. (*Id.*). On

- 1 -

July 8, 2004, Petitioner filed a Form I-589 Application for Asylum and Withholding of Removal, asserting a claim for a deferral of removal under the United Nations Convention against Torture.  (*Id.* at ¶ 6).

On October 6, 2004, DHS served Petitioner with a Notice to Appear, charging him as removable under the Immigration and Nationality Act ("INA") § 237(a)(1) "as an alien who, at the time of entry or adjustment of status, was not in possession of a valid unexpired immigrant visa, reentry permit, border crossing identification card, or other valid entry document required by the INA."  (*Id.* at ¶ 7).   Petitioner appeared before an Immigration Judge ("IJ") for a merits hearing.  (*Id.* at ¶ 8).   On August 22, 2005, the IJ denied Petitioner's applications for relief and ordered Petitioner removed to Guinea.  (*Id.*).   On September 2, 2005, Petitioner appealed the IJ's order of removal to the Board of Immigration Appeals ("BIA").  (*Id.* at ¶ 9).   The BIA denied Petitioner's appeal on April 25, 2007.  (*Id.* at ¶ 10).

On May 16, 2007, Petitioner was arrested for criminal possession of stolen property in the fifth degree.  (*Id.* at 35, ¶ 11).   On or about May 21, 2007, Petitioner filed a petition for review of the BIA's April 25, 2007, order with the United States Court of Appeals for the Second Circuit.  (*Id.* at ¶ 12).   On July 9, 2008, the Second Circuit denied the petition.  (*Id.*).   On April 23, 2009, Petitioner was arrested and charged with attempted failure to disclose the origin of a recording in the second degree and on December 17, 2009, Petitioner pleaded guilty to this offense.  (*Id.* at ¶ 13).   On December 17, 2009, Petitioner was convicted of attempted criminal possession of stolen property in the fifth degree.  (*Id.* at ¶ 14).

On December 23, 2014, Petitioner filed a Form I-821 Application for Temporary Protected Status and a Form I-765 Application for Work Authorization with the United States Citizenship and Immigration Services ("USCIS").  (*Id.* at ¶ 15).  On July 14, 2015, USCIS denied both applications due to Petitioner's prior criminal convictions.  (*Id.*).

On May 1, 2018, Petitioner was arrested at the Champlain, New York port-of-entry after Canada denied him entry.  (*Id.* at ¶ 16).  Petitioner informed Customs and Border Protection officers that he was in the United States illegally and that he was subject to a prior removal order.  (*Id.*).  DHS detained Petitioner based on his prior removal order.  (*Id.*).  On May 2 and 15, 2018, DHS served Petitioner with formal Warnings for Failure to Depart, which included a Form I-229(a) and an instruction sheet listing actions that Petitioner was required to complete within thirty days to assist DHS in obtaining a travel document for his removal.  (*Id.* at ¶ 17).  Petitioner refused to sign the Form I-229(a).  (*Id.*).

On or about May 15, 2018, United States Immigration and Customs Enforcement ("ICE") sent a presentation package to the Embassy of the Republic of Guinea in Washington, D.C., requesting that a travel document be issued for Petitioner's removal.  (*Id.* at ¶ 18).  On June 13, 2018, ICE issued a Notice to Alien of File Custody Review, stating that Petitioner's custody would be reviewed by July 30, 2018.  (*Id.* at 36, ¶ 19).  On July 30, 2018, DHS served Petitioner with an Imminent Letter of Removal and Notice pursuant to 8 C.F.R. § 241(g)(4), stating that it would not review Petitioner's custody because removal was imminent.  (*Id.* at ¶ 20).

On August 7, 2018, Petitioner refused his removal to Guinea.  (*Id.* at ¶ 21).  On August 21, 2018, Petitioner filed an emergency stay of removal and a motion to reopen his

removal proceedings with the BIA.  (*Id.* at ¶ 22).  The BIA granted the emergency stay. (*Id.*).  On September 27, 2018, ICE decided to continue Petitioner's detention after a review of his custody status based on its conclusion that Petitioner would not abide by the terms of his release from custody due to his prior criminal history, conflicting information he provided regarding his identity and entry into the United States, and attempt to flee to Canada.  (*Id.* at ¶ 23).

On February 25, 2019, Petitioner's counsel requested Petitioner's immediate release, which ICE denied on March 13, 2019.  (*Id.* at ¶ 24).  On March 20, 2019, DHS filed a motion in Immigration Court opposing Petitioner's request for a bond hearing on the basis that Petitioner was detained under 8 U.S.C. § 1231.  (*Id.* at ¶ 25).  On April 10, 2019, the IJ denied Petitioner's request to change his custody status, holding that the Immigration Court lacked jurisdiction to consider the request.  (*Id.* at ¶ 26).  On July 17, 2019, the BIA denied Petitioner's motion to reopen his removal proceedings.  (*Id.* at ¶ 27). That same day, DHS notified Petitioner that his custody status would be next reviewed on or about July 30, 2019.  (*Id.* at ¶ 28).  On July 25, 2019, DHS decided to continue Petitioner's detention.  (*Id.* at ¶ 29).

On August 12, 2019, Petitioner filed a petition for review of the BIA's July 17, 2019, order, as well as a motion for stay of removal, with the Second Circuit.  Petition for Review, *Sow v. Barr*, No. 19-2464, Dkt. 2 (2d Cir. Aug. 12, 2019); Motion for Stay of Removal, *Sow v. Barr*, No. 19-2464, Dkt. 12 (2d Cir. Sept. 6, 2019).  Petitioner was granted a stay of removal by a three-judge panel.  *Sow v. Barr*, No. 19-2464, Dkt. 43 (2d Cir. Nov. 20, 2019).  Petitioner's petition for review remains pending before the Second Circuit.

- 4 -

## DISCUSSION

### I.  Jurisdiction

The federal habeas corpus statute gives district courts jurisdiction to hear immigration-related detention cases.  *See* 28 U.S.C. § 2241(c)(3); *Demore v. Kim*, 538 U.S. 510, 517-18 (2003) (holding federal courts have jurisdiction to review challenges to pre-removal detention); *Zadvydas v. Davis*, 533 U.S. 678, 688 (2001) (holding "§ 2241 habeas corpus proceedings remain available as a forum for statutory and constitutional challenges to post-removal-period detention" in immigration cases).  District courts do not have jurisdiction over challenges to the legality of final orders of deportation, exclusion, and removal; jurisdiction to review such challenges rests exclusively in circuit courts.  *See Gittens v. Menifee*, 428 F.3d 382, 384 (2d Cir. 2005) ("[The REAL ID Act, 119 Stat. 231, § 106(a) (May 11, 2005)] eliminates habeas jurisdiction over final orders of deportation, exclusion, and removal, providing instead for petitions of review . . . which circuit courts alone can consider.").

### II.  Statutory Basis for Petitioner's Detention

As an initial matter, the Court must determine whether Petitioner is presently detained pursuant to § 1226(c) or § 1231.  "The distinction between § 1226 and § 1231 essentially comes down to whether an alien is subject to a final order of removal."  *Enoh v. Sessions*, 236 F. Supp. 3d 787, 793 (W.D.N.Y. 2017), *appeal withdrawn*, No. 17-1236, 2017 WL 6947858 (2d Cir. Dec. 7, 2017).  Section 1231 of the INA addresses detention of "immigrants in the 'removal period,' the term used in the statute to describe the 90-day period following an order of removal during which 'the Attorney General shall remove the

alien.'" *Hechavarria v. Sessions*, 891 F.3d 49, 54 (2d Cir. 2018) (quoting 8 U.S.C. § 1231(a)(1)(A)).  The removal period begins "on the latest of the following": (1) "[t]he date the order of removal becomes administratively final"; (2) "[i]f the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order"; and (3) "[i]f the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement."  8 U.S.C. § 1231(a)(1)(B).

In this case, Petitioner filed two petitions for review before the Second Circuit.  The first sought review of the BIA's April 25, 2007, order dismissing Petitioner's appeal of his removal order.  (Dkt. 4 at 35, ¶ 12).  The petition for review was denied by the Second Circuit on July 9, 2008.  (*Id.*).  The second sought review of the BIA's July 17, 2019, order denying Petitioner's motion to reopen his removal proceedings.  Petition for Review, *Sow v. Barr*, No. 19-2464, Dkt. 2 (2d Cir. Aug. 12, 2019).  Petitioner also filed a motion for a stay of removal.  Motion for Stay of Removal, *Sow v. Barr*, No. 19-2464, Dkt. 12 (2d Cir. Sept. 6, 2019).  Petitioner was granted a stay of removal by the Second Circuit, *Sow v. Barr*, No. 19-2464, Dkt. 43 (2d Cir. Nov. 20, 2019), and the petition for review remains pending.

Respondents argue that Petitioner is detained pursuant to § 1231(a)(6) because Petitioner is subject to a final order of removal.  (Dkt. 4 at 17-18).  Respondents contend that despite the Second Circuit's decision in *Hechavarria*, 891 F.3d at 53, Petitioner is subject to a final order of removal because the stay is in connection with review of his motion to reopen his removal proceedings and not his final order of removal.  (*Id.* at 18

("Although . . . the Second Circuit has held that an alien who obtains a judicial stay of his removal order associated with a direct challenge to a removal order does not have a final order of removal . . . no court of appeals has ever applied this principle to [Petitioner's] situation—a stay associated with the review of a collateral attack on the removal order." (citation omitted))).   However, as discussed below, because impediments to Petitioner's removal remain, the Court finds that Petitioner is not subject to a final order of removal and is thus not detained pursuant to § 1231.

In concluding that Petitioner is detained pursuant to § 1226, the Court finds the reasoning of a decision from this District persuasive.  In *Enoh v. Sessions*, 236 F. Supp. 3d 787 (W.D.N.Y. 2017), District Judge Vilardo concluded that even though the petitioner's order of removal had become administratively final, and he was pursuing relief before the Second Circuit of the BIA's order denying his motion to reopen his removal proceedings, the petitioner was detained pursuant to § 1226, reasoning that § 1226 detention continues regardless of whether the appeal directly challenges a final order of removal, or does so collaterally by seeking review of the denial of a motion to reopen removal proceedings.  *Id.* at 794-96.  In reaching this conclusion, Judge Vilardo cited *Kudishev v. Aviles*, No. 15-2545 (MCA), 2015 WL 8681042, at *4 n.1 (D.N.J. Dec. 10, 2015), which reached a similar conclusion, in part, on the basis "that denials of final orders of removal and denials of motions to reopen final orders of removal are not treated differently for jurisdictional purposes even though Congress has explicitly granted federal courts the power to review 'any final order of removal' under 8 U.S.C. § 1252(a)(1)."  *Id.* at 795; *see also Vasilia v. Keisler*, 248 F. App'x 247, 248 (2d Cir. 2007) ("[A]lthough [the petitioner] is challenging

the denial of relief in 'asylum-only' proceedings, this Court nonetheless has jurisdiction to review the denial of his motion to reopen his proceedings under 8 U.S.C. § 1252(a)(1) because the denial of relief in these circumstances is the functional equivalent of a removal order." (citation omitted)).

Judge Vilardo also found instructive the Second Circuit's decision in *Guerra v. Shanahan*, 831 F.3d 59, 63 (2d Cir. 2016), in which the Circuit "rel[ied] on previous rulings interpreting similar language regarding final orders of removal" and "found that the structure of the detention statutes supported 'the conclusion that [the alien's] detention during the pendency of his withholding only proceedings is detained pursuant to 8 U.S.C. § 1226(a).'" *Id.* (quoting *Guerra*, 831 F.3d at 64 ("8 U.S.C. § 1226(a) authorizes the detention of aliens whose removal proceedings are ongoing.  By contrast, 8 U.S.C. § 1231(a) is concerned mainly with defining the 90-day removal period during which the Attorney General 'shall remove the alien.'  The former provision is the more logical source of authorization for the detention of aliens currently in withholding-only proceedings.")). Accordingly, Judge Vilardo concluded that the petitioner was not detained pursuant to § 1231 because the Second Circuit had stayed the petitioner's removal and, thus, the petitioner's removal proceedings were "ongoing." *Id.*  ("Indeed, if his petition for review in the Second Circuit is successful, he will have a chance to obtain the cancellation of his removal." (citations omitted)).

The conclusion in *Enoh* is consistent with the Second Circuit's reasoning in *Hechavarria*.  In *Hechavarria*, the Circuit had granted the petitioner's stay of removal while his petition for review was pending, and held that the petitioner was detained under

§ 1226(c) because "there remains a very clear impediment to his removal—review by this Court." *Id.* at 57.  The Circuit further noted that "[g]iven the fact that such review has not been completed, it would make no sense to classify [the petitioner] in the same section of the statute that governs the removal of aliens who have no remaining barriers preventing their immediate removal." *Id.*  Although *Hechavarria* involved a stay in connection with review of a final order of removal and not a denial of a motion to reopen the removal proceedings, its reasoning supports the conclusion that petitioners are not subject to final orders of removal where they face a clear impediment to their removal—including where that impediment is a stay granted in connection with an appeal from the denial of a request to reopen the proceedings.  *See Chupina v. Holder*, 570 F.3d 99, 103 (2d Cir. 2009) (finding petitioner was not subject to final order of removal where the BIA denied asylum and upheld IJ's removal order but remanded claims for withholding because the petitioner's "remanded applications . . . if granted, effectively would result in the cancellation of any order removing [him]").[1]

Here, Petitioner was granted a stay of removal and his petition for review remains pending.  There remains the possibility that the Second Circuit might grant the petition for review and remand the matter for further administrative proceedings for reconsideration of

---

[1]     Respondents cite *Diouf v. Mukasey*, 542 F.3d 1222, 1229-30 (9th Cir. 2008), to support their argument that Petitioner is subject to a final order of removal.  (Dkt. 4 at 18-19 ("As the Ninth Circuit recognized, a stay of removal associated with a petitioner's collateral attack (often years after the beginning of the removal period), cannot undo the start of the removal period, which began years earlier. . . .")).  However, for the reasons discussed above and as further articulated in *Enoh*, 236 F. Supp. 3d at 794-95, *Diouf* is not persuasive and the Court does not find it consistent with the approach taken by this Circuit.

Petitioner's motion to reopen.  If ultimately successful, Petitioner's order of removal would be cancelled.  Under these circumstances, the Court concludes that Petitioner is not subject to a final order of removal and, thus, is detained pursuant to § 1226(c).

### III.   <u>Petitioner's Claims</u>

The Petition challenges the constitutionality of Petitioner's continued detention under § 1226(c).  (Dkt. 1).  In particular, Petitioner contends that his detention violates his right to due process.  Petitioner seeks immediate release or, in the alternative, a bond hearing.  (*Id*. at 8).  For the reasons that follow, the Court denies Petitioner's request for immediate release, but finds that Petitioner has been deprived of procedural due process and is thus entitled to an individualized bond hearing at which the Government bears the burden of proving by clear and convincing evidence that Petitioner poses either a risk of flight or a danger to the community.

In prior decisions, this Court has set forth the history regarding the constitutionality of the mandatory detention provided for by § 1226(c), in the wake of the Supreme Court's decision in *Jennings v. Rodriguez*, 138 S. Ct. 830 (2018), including the distinctions between substantive and procedural due process challenges, and it will not repeat that discussion here.  *See, e.g., Ranchinskiy*, 422 F. Supp. 3d at 793-94.  Rather, the Court will turn directly to Petitioner's substantive and procedural due process challenges.

### A.   **Substantive Due Process**

"[A]liens . . . have a substantive due process right to be free of arbitrary confinement pending deportation proceedings."  *Doherty v. Thornburgh*, 943 F.2d 204, 209 (1991).  "It is axiomatic, however, that an alien's right to be at liberty during the course of deportation

proceedings is circumscribed by considerations of the national interest." *Id.* If the infringement on an alien's "liberty interest results from a proper exercise of discretion," then a prolonged detention "is not conduct that goes beyond the range of government activity permitted by the Constitution." *Id.* at 211. "[D]etention of an alien 'once removal is no longer reasonably foreseeable' . . . violates the Due Process Clause." *Wang v. Ashcroft*, 320 F.3d 130, 146 (2d Cir. 2003). "[O]nce the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Zadvydas*, 533 U.S. at 701.

In the instant matter, Petitioner has failed to demonstrate that his removal is not reasonably foreseeable. To the contrary, Petitioner would be removed if he withdrew his petition for review presently before the Second Circuit. Petitioner "may not rely on the extra time resulting" from his appeal "to claim that [his] prolonged detention violates substantive due process." *Doherty*, 943 F.2d at 211; *Thompson v. Lynch*, No. 16 CV 6608 (CJS), 2017 WL 344970, at *7 (W.D.N.Y. Jan. 24, 2017) ("Unless and until the circuit court vacates the removal order or otherwise rules in petitioner's favor on the petition for review, petitioner remains a criminal alien subject to removal and subject to lawful mandatory detention in DHS custody under the authority of the INA."). Accordingly, the Court denies the portion of the Petition that rests on substantive due process grounds as well as Petitioner's associated request for immediate release.

**B.      Procedural Due Process**

For the reasons previously articulated in other decisions by this Court, *see, e.g.,*
*Ranchinskiy*, 422 F. Supp. 3d at 797; *Constant v. Barr*, 409 F. Supp. 3d 159, 167-68
(W.D.N.Y. 2019), this Court agrees with the overwhelming majority of courts in this
Circuit that the multi-factor approach articulated by the court in *Sajous v. Decker*, No. 18-
cv-2447 (AJN), 2018 WL 2357266, at *1 (S.D.N.Y. May 23, 2018), and other courts within
this Circuit, is a useful tool for addressing procedural due process claims for aliens detained
pursuant to § 1226(c) in the immigrant habeas context.  Those factors are as follows:

> (1) the length of time the petitioner has been detained; (2) the party
> responsible for the delay; (3) whether the petitioner has asserted defenses to
> removal; (4) whether the detention will exceed the time the petitioner spent
> in prison for the crime that made him removable; (5) whether the detention
> facility is meaningfully different from a penal institution for criminal
> detention; (6) the nature of the crimes committed by the petitioner; and (7)
> whether the petitioner's detention is near conclusion.

*Cabral v. Decker*, 331 F. Supp. 3d 255, 261.  However, these factors cannot be applied in
a rigid fashion, and each individual's detention circumstance must be evaluated on a case-
by-case basis to determine whether it has become unreasonable or unjustified, consistent
with the flexible nature of due process.  *Jennings*, 138 S. Ct. at 852. The case-by-case
approach is an "as-applied, fact-based analysis . . . derived from the Supreme Court's
decisions in *Zadvydas* and *Demore*[.]"  *Sajous*, 2018 WL 2357266, at *10.[2]

---

[2]      Respondents contend that Petitioner's receipt of Post-Order Custody Reviews
("POCRs") satisfies the requirements of Due Process.  (Dkt. 4 at 24).  The Court disagrees.
*See, e.g.*, *Leslie v. Attorney General*, 678 F.3d 265, 267 (3d Cir. 2017) (finding POCRs
procedurally inadequate as neither petitioner nor counsel were present and no hearing was
held); *Casas-Castrillon v. Dep't of Homeland Sec.*, 535 F.3d 942, 952 (9th Cir. 2008)
(finding POCRs procedurally inadequate as they fall "far short of the procedural

As to the first factor, Petitioner has been detained in immigration custody over two years—since May 2018.  (*See* Dkt. 4 at 81).  Thus, "[t]he first and 'most important' . . . factor weighs heavily in favor of granting the petition." *Bermudez Paiz v. Decker*, No. 18-CV-4759 (GHW) (BCM), 2018 WL 6928794, at *13 (S.D.N.Y. Dec. 27, 2018) (citation omitted).  "[C]ourts in this Circuit have generally been skeptical of prolonged detention of removable immigrants, without process, lasting over six months," *Lett v. Decker*, 346 F. Supp. 3d 379, 387 (S.D.N.Y. 2018) (quoting *Lopez v. Sessions*, No. 18 Civ. 4189 (RWS), 2018 WL 2932726, at *14 (S.D.N.Y. June 12, 2018)), *appeal filed*, No. 18-3714 (2d Cir. Dec. 11, 2018), and "courts have found detention shorter than a year to be unreasonably prolonged as part of procedural due process analysis," *Rosado Valerio v. Barr*, No. 19-CV-519, 2019 WL 3017412, at *4 (W.D.N.Y. July 10, 2019) (collecting cases), *appeal dismissed*, No. 19-2848, 2020 WL 1126526 (2d Cir. Jan. 9, 2020).

While the record before the Court shows that Petitioner requested an IJ to review his custody status (*see* Dkt. 4 at 112), the record does not show that Petitioner ever received such review or that he had any opportunity to advocate for his release from custody while his immigration proceedings were ongoing.  Indeed, the IJ's order dated April 10, 2019,

---

protections afforded in ordinary bond hearings, where aliens may contest the necessity of their detention before an [IJ] and have an opportunity to appeal that determination to the BIA" where the petitioner was not interviewed personally, not given an opportunity to contest the facts on which ICE based its decision or to appeal the decision); *Hamama v. Adducci*, 285 F. Supp. 3d 997, 1018 n.12 (E.D. Mich. 2018) ("[T]he Government . . . cannot[] contend that [POCRs] are an adequate replacement for a bond hearing. . . . Virtually every detainee who had a POCR review was denied release, and given a terse written statement that the Government was still interested in removing the detainee; there is no indication that any legitimate bond issue was even considered." (citations omitted)).

indicates that Petitioner's request was denied because the court "lack[ed] jurisdiction for [a] bond hearing." (*Id.*). Consequently, this factor weighs heavily in Petitioner's favor. *See, e.g.*, *Bermudez Paiz*, 2018 WL 6928794, at *30 (first factor weighed heavily in petitioner's favor where petitioner had been detained for more than 16 months since his parole had been revoked); *Joseph v. Decker*, No. 18-CV-2640(RA), 2018 WL 6075067, at *11 (S.D.N.Y. Nov. 21, 2018) (first factor weighed in petitioner's favor where petitioner had been detained for over 14 months), *appeal withdrawn*, 2019 WL 3334802 (2d Cir. May 1, 2019).

Respondent contends that the second factor in the analysis—which party is responsible for the delay—undercuts a finding of an unreasonable length of detention in Petitioner's case because Petitioner's "removal has been delayed by his own actions, he should not be heard to complain about his continued detention." (Dkt. 4 at 20). For procedural due process claims, when "considering whether [Petitioner] or the Government is responsible for the prolonged proceedings, the Court 'may examine the record to determine whether the alien sought repeated or unnecessary continuances, or filed frivolous claims and appeals.'" *Vallejo v. Decker*, No. 18-CV-5649, 2018 WL 3738947, at *4 (S.D.N.Y. Aug. 7, 2018) (quoting *Sopo v. U.S. Att'y Gen.*, 825 F.3d 1199, 1218 (11th Cir. 2016), *vacated on other grounds*, 890 F.3d 952 (11th Cir. 2018)); *see Sajous*, 2018 WL 2357266, at *11 ("[A]liens who are merely gaming the system to delay their removal should not be rewarded with a bond hearing that they would not otherwise get under the statute." (quoting *Chavez-Alvarez v. Warden York Cty. Prison*, 783 F.3d 469, 476 (3d Cir. 2015))). "[C]ourts should keep in mind that 'aliens should not be punished for pursuing

avenues of relief and appeals[,]' but evidence of bad faith delays may cut against them."
*Hernandez v. Decker*, No. 18-CV-5026 (ALC), 2018 WL 3579108, at *7 (S.D.N.Y. July
25, 2018) (quotation omitted), *appeal withdrawn*, No. 18-2824, 2019 WL 1377025 (2d Cir.
Feb. 5, 2019).

In this case, some of the delay can be attributed to Petitioner's efforts to delay his
removal to Guinea.  (Dkt. 4 at 36, ¶¶ 16, 21).  However, a significant portion of the delay
can be attributed to the BIA and Second Circuit's consideration of Petitioner's appeals in
connection with his order of removal and motion to reopen his removal proceedings.  (*Id.*
at 34, ¶¶8, 12; *id.* at 36, ¶¶ 22, 37).  Petitioner's "pursuit of relief from removal does not,
in itself, undermine a claim that detention is unreasonably prolonged."  *Hernandez*, 2018
WL 3579108, at *9.  The Court cannot state that Petitioner's appeals were frivolous or
were pursued in bad faith.  Thus, while most of the delay rests with Petitioner's litigation
strategy, the Court cannot conclude that that strategy has been employed for purposes of
creating delay.

As for the third factor, Petitioner has asserted a defense to removal in his
immigration proceedings.  Specifically, Petitioner moved to reopen his removal
proceedings to reapply for asylum based on changed country conditions in Guinea pursuant
to 8 C.F.R. § 1003.2(c)(3)(ii).  (*See* Dkt. 4 at 115).  "The Court need not inquire into the
strength of [Petitioner's] defenses—it is sufficient to note their existence and the resulting
possibility that the Petitioner will ultimately not be removed, which diminishes the ultimate
purpose of detaining the Petitioner pending a final determination as to whether he is
removable."  *Sajous*, 2018 WL 2357266, at *11; *see Cabral*, 331 F. Supp. 3d at 261-62

(finding the third factor weighed in petitioner's favor because he asserted several defenses to his removal "including asylum . . . and relief under the Convention Against Torture"); *Perez v. Decker*, No. 18-CV-5279 (VEC), 2018 WL 3991497, at *5 (S.D.N.Y. Aug. 20, 2018) ("Petitioner has made a claim for asylum that could be a defense to his removal, again tilting the scales toward his unreviewed detention being unreasonable."). Accordingly, this factor weighs in Petitioner's favor.

The fourth factor also appears to weigh in favor of Petitioner. Petitioner was sentenced to a fine for his conviction for attempted failure to disclose the origin of a recording in the second degree, and was sentenced to a conditional discharge and fine for his conviction for attempted criminal possession of stolen property. (*Id.* at 108-09). Because the record indicates that Petitioner has not been incarcerated as a result of his criminal convictions, but he has been detained in immigration custody for over two years, this factor weighs in favor of Petitioner.

The fifth factor—whether the detention facility is meaningfully different from a penal institution for criminal detention—is at best neutral. This Court has previously found that because BFDF "houses individuals against their will with various restrictions on their freedom of movement . . . while perhaps not akin to a maximum-security prison, for many individuals . . . the facility does not seem meaningfully different from at least a low-security penal institution for criminal detention." *Singh v. Barr*, No. 1:19-CV-01096 EAW, 2020 WL 1064848, at *10 (W.D.N.Y. Mar. 2, 2020).

The sixth factor, the nature of the crime Petitioner was convicted of, weighs in favor of Petitioner. Petitioner was convicted of nonviolent misdemeanors and received no terms

of incarceration.  *See Hernandez*, 2018 WL 3579108, at *10 ("Similarly, no record facts indicate that he would be a danger to his community.  [The petitioner's] convictions were for nonviolent offenses.  To the extent that his criminal sentences reflect the state's judgment of his dangerousness, that [the petitioner] received no term of incarceration for any of the offenses is notable.").

The final factor, whether Petitioner's detention is near conclusion, is at best neutral. Although the merits of Petitioner's petition for review have been briefed before the Second Circuit, it is unclear when the Second Circuit will issue its decision.  *See Dukuray v. Decker*, No. 18 CV 2898 (VB), 2018 WL 5292130, at *5 (S.D.N.Y. Oct. 25, 2018) ("[T]here is 'significant reason to believe that [petitioner's detention] will continue . . . because . . . he would remain detained throughout the course of an appeal by either side.'" (second alteration in original) (quoting *Lett*, 346 F. Supp. 3d at 387)).  And if the Second Circuit remands for further immigration proceedings, then Petitioner's detention will only be extended.

Because most if not all of the factors favor Petitioner, the Court finds that Petitioner's continued detention without a bond hearing is constitutionally unjustified.  *See Arce-Ipanaque v. Decker*, No. 19-CV-1076 (JMF), 2019 WL 2136727, at *2 (S.D.N.Y. May 15, 2019) ("At bottom, the minimal burden that a bond hearing would place on the Government is far outweighed by [the petitioner]'s interest in ensuring that his continued detention is justified." (quotation and original alteration omitted)).

### C.       Process Due to Petitioner

It is well established within this Circuit that when a court determines the length of a petitioner's detention pursuant to § 1226(c) is unjustified, due process requires that he be given a bond hearing where an individualized determination can be made as to whether he should remain confined for the duration of his immigration proceedings.  *See, e.g.*, *Bermudez Paiz*, 2018 WL 6928794, at *14 (holding petitioner was entitled to a bond hearing after finding his detention was unreasonably prolonged); *Cabral*, 331 F. Supp. 3d at 262-63 (same); *Hernandez*, 2018 WL 3579108, at *10 (same).  "The only remaining question concerns the burden of proof at the bond hearing."  *Bermudez Paiz*, 2018 WL 6928794, at *15.

Prior to *Jennings*, the Second Circuit required in bond hearings that "the government establish[ ] by clear and convincing evidence that the immigrant poses a risk of flight or a risk of danger to the community."  *Lora v. Shanahan*, 804 F.3d 601, 616 (2d Cir. 2015).  In *Jennings*, the Supreme Court held "that § 1226 itself does not require the government to carry the clear and convincing evidence burden. . . .  However, the Supreme Court left open the question of what the Constitution requires for aliens detained pursuant to § 1226(c)."  *Cabral*, 331 F. Supp. 3d at 262 n.6 (citing *Jennings*, 138 S. Ct. at 847, 851).  The vast majority of courts in this Circuit to have considered this issue, including this Court, have found that due process requires that an individual such as Petitioner is entitled to a bond hearing where the government must demonstrate dangerousness or flight risk by clear and convincing evidence.  *See, e.g., Ranchinskiy*, 422 F. Supp. 3d at 800.

Additionally, as the Court has previously noted, both due process and BIA precedent require the IJ to consider ability to pay and alternative conditions of release in setting bond. *See Abdi v. Nielsen*, 287 F. Supp. 3d 327, 335-39 (W.D.N.Y. 2018).

## **CONCLUSION**

For the foregoing reasons, the Petition (Dkt. 1) is granted solely to the extent that the Court orders Respondents to afford Petitioner an individualized bond hearing consistent with the procedures outlined in this Decision and Order within 14 days of its entry. The Clerk of Court is instructed to close this case. If Petitioner requests a continuance that results in a bond hearing date outside the 14-day deadline set forth above, such a continuance will be in compliance with the instant Decision and Order, as long as the new date falls within a reasonable time period. Respondents are directed to file a status update with the Court within three (3) days of the date of Petitioner's bond hearing regarding the outcome of the hearing, or on or before September 28, 2020, whichever date is earlier. The Clerk of Court is instructed to close this case.

SO ORDERED.

ELIZABETH A. WOLFORD
United States District Judge

Dated:      August 27, 2020
            Rochester, New York